**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

IN RE LETTER OF REQUEST        )
FROM ARGENTINA                 )
IN THE MATTER OF               )    Misc. No. 06-
INTEGRA FINANCIAL SERVICES, L.L.C. )

**GOVERNMENT'S MEMORANDUM OF LAW**
**IN SUPPORT OF APPLICATION FOR ORDER**

This memorandum of law is submitted in support of the

Application for an Order pursuant to Title 28, United States

Code, Section 1782, in order to execute a  letter of request from

Argentina. A copy of the translation is attached.

FACTUAL BACKGROUND:

Litigation is being conducted before the Sixth Chamber

Court of Appeals "B" for the Treasury Court of Argentina. The

litigation relates to the payment of taxes.

EVIDENCE SOUGHT:

The Argentine authorities seek information from the

Delaware Secretary of State's Office and a company that resides

in this  District.  The authority for this Court to accede to

this request is contained in Title 28, United States Code,

Section 1782, which states in part:

(a)  The district court of the district in which a person
     resides or is found may order him to give his testimony
     or statement or to produce a document or other thing for
     use in a proceeding in a foreign or international
     tribunal, including criminal investigations conducted
     before formal accusation.  The order may be made pursuant
     to a letter rogatory issued, or request made, by a
     foreign or international tribunal or upon the application

> of any interested person and may direct that the
> testimony or statement be given, or the document or other
> thing be produced, before a person appointed by the
> court.    By virtue of his appointment, the person
> appointed has power to administer any necessary oath and
> take the testimony or statement. The order may prescribe
> the practice and procedure, which may be in whole or part
> the practice and procedure of the foreign country or the
> international tribunal, for taking the testimony or
> statement or producing the document or other thing.    To
> the extent that the order does not prescribe otherwise,
> the testimony or statement shall be taken, and the
> document or other thing produced, in accordance with the
> Federal Rules of Civil Procedure.

The proper criteria for determining whether the court

should exercise its discretion in favor of executing the request

are outlined in _In Re Request for Judicial Assistance from the_

_Seoul District Criminal Court_, 555 F.2d 720, 723 (9th Cir. 1977)

(citation omitted):

> Under the statute the only restrictions
> explicitly stated are that the request be
> made by a foreign or international
> tribunal, and that the testimony or
> material requested be for use in a
> proceeding in such a tribunal.... [and]
> that the investigation in connection
> with which the request is made must
> relate to a judicial or quasi-judicial
> controversy.

Moreover, " (t)he judicial proceeding for which assistance is

sought ... need not be pending at the time of the request for

assistance; it suffices that the proceeding in the foreign

tribunal and its contours be in reasonable contemplation when

the request is made." In Re Letter of Request from the Crown

Prosecution Services of the United Kingdom, 870 F.2d 686, 687

(D.C. Cir. 1989). The letter of request in this case shows that

the information sought is for use in such proceedings in Argentina and hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled ex parte, and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE,** the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _Richard G. Andrews_
Richard G. Andrews
Assistant U.S. Attorney
Delaware Bar I.D. No.2199
1201 Market Street
Wilmington, DE    19801
(302) 573-6277

Dated: 6/28/06



1

COLEGIO DE TRADUCTORES PÚBLICOS
DE LA CIUDAD DE BUENOS AIRES

República Argentina                                                    Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L

TRADUCCION PUBLICA------------------------------------------------------------------

**TRANSLATION**------------------------------------------------------------------------

**DIPLOMATIC LETTERS ROGATORY** -------------------------------------------

Court involved: Tribunal Fiscal de la Nación (*Argentina's Treasury Court,*
*Translator's Note*) -------------------------------------------------------------------

Court of Appeal: Court "B". -----------------------------------------------------------

Chamber: Sixth Chamber. --------------------------------------------------------------

Judge in charge of Chamber: Hon. Judge Juan-Pedro Castro. --------------------------

Case number: Twenty-one thousand two hundred seventy nine / hyphen / I (*a Roman*
*numeral*), plus a jointly tried case, number twenty-one thousand two hundred eighty /
hyphen / I (*ditto*). ---------------------------------------------------------------------

Case entitled: Integra Consultores y Servicios S.A. (*Integra, a Consulting and Service*
*Company, Inc.: S.A. is the Spanish acronym for "sociedad anónima" a type of*
*company quite similar to the American "Co., Inc." type of business. T's N.*) on
Appeal. --------------------------------------------------------------------------------

Nature of cause: An ex officio determination.-----------------------------------------

Jurisdiction: Jurisdiction over the subject matter of the case.----------------------------

Plaintiff: Integra Consultores y Servicios S.A. (*ditto*)-----------------------------------

Plaintiff's Registered Domicile: (*Street address is written Argentine style*) Marcelo T.
de Alvear 883, Piso 2° (*2ⁿᵈ floor*), Ciudad de Buenos Aires, Republica Argentina.
(*Between brackets, it is clarified that this is the adress of a law firm by the firm name*
*of Estudio Juridico Laporta, Lopez & Asociados –i.e. Laporta, Lopez & Associates*
*Law Office, T's N.*)---------------------------------------------------------------------

Defendant: Dirección General Impositiva / Administración Federal de Ingresos
Públicos (*The first name –lit. General Revenue Office, is no longer in use, even*
*though its Spanish acronym, DGI, can be seen all over the Spanish text attached*
*herewith. The second, more recent name –lit. The Federal Administration for Public*
*Revenue, is now in force. For an easier reading, we have chosen its Spanish*
*acronym, AFIP, in this translation, T's N.*)----------------------------------------------

Defendant's Registered Domicile: (*Street address is written Argentine style*) Defensa
192, entrepiso C (*mezzanine "C"*), Departamento Contencioso Judicial
(*Administrative Litigation Area*), Ciudad de Buenos Aires, República Argentina. ----

**The Hon. Judge Juan-Pedro Castro, in charge of the Sixth Chamber of the Court of Appeal "B", Argentina's Treasury Court, located on** (*Street address is written Argentine style*) **Avenida Julio Argentino Roca 671, 7º piso (*7th floor*), Ciudad de Buenos Aires, República Argentina, presents greetings to the Higher Central Authority in charge of receiving and processing requests for jurisdictional assistance in the State of Delaware, United States of America, and respectfully requests his/her assistance in connection with the following matter**: - Case number 21,279-I plus jointly tried case 21,280-I, entitled "Integra Consultores y Servicios s/Apelacion" (*Integra, a Consulting and Service Company*) on Appeal" have been brought to the Argentine Treasury Court, Sixth Chamber of the Court of Appeal "B". On folio 233 thereof, there appears a regulation dated: Buenos Aires, the twenty-fifth of June, year two thousand four, [whereas…, now therefore…] that reads in its pertinent part/quote: It has been approved that an additional documentation pertaining to third parties, offered by Plaintiff, be requested by means of diplomatic letters rogatory. The aforesaid letters rogatory plus documentation shall be signed by the undersigned, and submitted to the (*Argentine*) State Department within a delay of… etc. Signed: Juan-Pedro Castro, Judge.------------------------------------------------
Therefore, the assistance of the above mentioned Higher Authority is respectfully required so that a request be submitted to **Integra Financial Services LLC**, domiciled in the State of Delaware, 1013 Center Road, city of Wilmington, County of New Castle, zip code 19805, United States of America, taking into account that a company by the firm name of Corporation Service Company is an official representative of Integra Financial Services LLC at the said address: in this connection this Court requires that certified copies bearing the Apostille as per The Hague Convention, 1961, be sent to this Court, containing all partnership, commercial, and accounting documentation likely to demonstrate as follows:---------
a) the existence of the said company, lawfully incorporated in the USA,--------------
b) the transfer of funds to Integra Consultores y Servicios S.A.;-----------------------
c) the evidence of accounting processes performed in connexion to said transfers of funds to Integra Consultores y Servicios S.A.----------------------------------------------
d) statement of source and allocation of funds transmitted to Integra Consultores y Servicios S.A., those funds being an irrevocable contribution for a future call on shares. ----------------------------------------------------------------------------------------





3

**COLEGIO DE TRADUCTORES PÚBLICOS DE LA CIUDAD DE BUENOS AIRES**

República Argentina

Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L



This Court's jurisdiction is the precise and lawful jurisdiction to take cognizance of proceedings in this case, pursuant to the legal norms in force in the Argentine Republic such as: a) (*Argentine*) Act # one / one / six / eight / three, year one thousand nine hundred ninety-eight, and Argentina's Civil and Commercial Procedural Code. The following Court's members have been fully authorized to deal with these Diplomatic Letters Rogatory: (*just in case, let us clarify that, in Spanish-speaking countries, all and every people who have taken their university degrees at a school of law are awarded the title of Doctor –i.e. "Judicial Doctor", T's N.*) namely: Dr. Nicolas Mallo-Huergo, and/or Dr. Carlos Martinez, and/or Dr. Oliverio Lew, with a wide scope of powers to delegate and subrogate as needed. **A full copy of the lawsuit is attached hereto**. Pursuant to the Additional Protocol to the Interamerican Convention on Letters Rogatory (Argentine Act # 23503) we give you the particulars of the parties involved as well as an abstract of the cause.-------------------------------

Domiciles of the parties involved are as follows: ------------------------------------------

a) The apppellant is a company by the firm name of Integra Consultores y Servicios S.A.; street address: Avenida Paseo Colon 505, city of Buenos Aires, Argentina. Legal representative: Dr. Carlos Morales, street address: Reconquista 672, piso 10°m Buenos Aires, Argentina. ---------------------------------------------------------------

b) Defendant: Administracion General de Ingresos Publicos –AFIP, street address: Defensa 192, Entrepiso "C", Depto Contencioso Judicial, city of Buenos Aires, Argentina. Legal representative: Dr. Julio-Mario Idoyaga, who is legally domiciled at AFIP. ---------------------------------------------------------------------------------

This is a cause of an administrative nature that has been brought before the above mentioned Court. Integra Consultores y Servicios S.A. appealed against two administrative regulations issued by the Argentine National Treasury inasmuch as the AFIP has determined ex officio the amounts Integra was supposed to pay: a) on account of the income tax covering from year one thousand nine hundred ninety-eight to year two thousand, and: b) the added value tax covering from July, year one thousand nine hundred ninety-seven to April, year two thousand one. ------------------

The sum in dispute amounts to Argentine pesos seven hundred thirty thousand five hundred forty-three, with sixty-eight cents (*$ 730,543.68 –just in case, the Argentine monetary unit [peso] is written "$" just as the US dollar for time-honored historical reasons, T's N.*) and, in addition, interests, penalties, and other costs. ------------------



Integra Consultores y Servicios S.A. are against the ex officio determination issued by the Argentine National Treasury because the ANT either do not know or are unaware of the way the accounting practices ruling, from a tax point of view, the capital contributions to their equity from companies located abroad are managed, and, apparently, the ANT's opinion is extended to capital contributions performed by Integra Consultores y Servicios S.A. to other companies located in Argentina. The present evidence measure has been requested by the appellant who shall take care of expenses involved. Their request shall be performed by means of the Argentine State Department through their authorized officials. ---------------------------------------------

**In this connection** I kindly request full compliance, and offer to reciprocate in any similar case. ------------------------------------------------------------------------------

**Consigned, stamped, and signed** in my office, in the city of Buenos Aires, Argentina, on the twenty-first day of September, year two thousand five. There appears an illegible signature, and a rubber stamp reading Juan-Pedro Castro, Judge. - **Signature authentication**: In accordance to the law, I, the undersigned, certifies that the foregoing signature pertains to Dr. Juan-Pedro Castro, Judge in charge of the Sixth Chamber of the Court of Appeal "B", Argentina Treasury Court. Dr. Castro has been appointed by means of Decree # 963/97 from the Argentine Executive Branch, dated the eighteenth day of September year one thousand nine hundred ninety-seven, and Dr. Castro keeps being in office at present, I attest. Buenos Aires, the twenty-third day of September, year two thousand five. There appears an illegible signature and a rubber stamp reading Dr. Jose-Carlos Megasini, Administrative Secretary General, Argentina Treasury Court. --------------------------------------------------------- \

------------------------------------------------------------------------------------------

------------------------------------------------------------------------------------------

**AN APPEAL IS FILED.** ---------------------------------------------------------------

**MOTION TO DISMISS BASED ON THE VOIDNESS OF A LEGAL INSTRUMENT** -----------------------------------------------------------------------------

(All folios are numbered, from 60 to 76, to the upper right angle on the obverse only. On folios 60 to 62, same location, there appears a seal from the AFIP Office of the city of Mendoza, bearing number two / oh / seven, dated on the eigtheenth day of February, year two thousand three). ---------------------------------------------------

------------------------------------------------------------------------------------------





5

**COLEGIO DE TRADUCTORES PÚBLICOS**
**DE LA CIUDAD DE BUENOS AIRES**

República Argentina                                                      Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L

To the Hon. National Treasury Court:------------------------------------------------------

I, the undersigned, Mr Jose-Luis Manzano, in my capacity as Chairperson of Integra Consultores y Servicios S.A. (*Integra, a Consulting and Services Company, Inc.*) hereinunder Integra, domiciled on (*this, and all further addresses are written Argentine style, T's N.*) Avenida San Martin 1102, piso 2 (*2nd floor*), Oficina 109 (*Office # 109*) of the city of Mendoza, Province of Mendoza, (*Argentina*) a company that, now, establishes their legal domicile with regard to the present lawsuit on (*street address*) Marcelo T. de Avear 883, piso 2 (*2nd floor*) at the lawfirm by the name of Estudio Laporta, Lopez & Asociados, of the city of Buenos Aires –Federal Capital of Argentina- I appear before this Hon. Treasury Court with my lawyer, Dr Alfredo A. Bisero-Paratz with professional license issued by the National Certification Council, registered in Volume 59, on Folio 499. In this connection, we hereby appear and respectfully express as follows: ------------------------------------------------------



**I. INTEGRA'S LEGAL STATUS**: I hereby submit a copy of the Incorporation Act of the said company, the appointment list of the members of the Board of Directors, a list that, in my capacity as Chairperson of Integra, is in force, I attest. Integra Taxpayer Registration number is CUIT 30-69026856-2 ------------------------------------

**II. OBJECTIVE**: Within the legal period in force I hereby file an appeal foreseen in Subsection (b) of Section 76 of (*Argentine*) Act # 11683 (the text of which has been put in order in 1998), against Regulation # 165/02 (DV RRME) issued by the Administracion Federal de Ingresos Publicos (*lit. The Federal Administration for Public Revenue –an agency similar to the U.S. IRS. Hereinunder AFIP as per their Spanish acronym, T's N.*), dated December 23, 2002, Appendix A, notified to us on December 26, 2002. Said Regulation # 165/02 stated: ------------------------------------

(i) the amount of the income tax relevant to fiscal years 1998 and 1999 had been ex officio determined  as well as the tax fail of fiscal year 2000 to the amount of Argentine pesos 372,025.04 plus their compensable interests, plus --------------------

(ii) on the basis of Section 45 of the above mentioned Act 11683/98 a fine for Argentine pesos 260,417.53 had been applied.------------------------------------------

In virtue of the reasons that are going to be discussed hereinunder, I request that the aforesaid Regulation be dismissed. ------------------------------------------------------

At the same time, based on Subsection (h) of Section 171 of Act #11683/98, I file a motion for dismiss on the grounds of nullity against the decisions that had been taken

with regard to the refuted ex officio determination. I request that the motion to challenge as null and void, the motives of which are discussed under the Chapter IV of this writ, be treated by Your Honor in character of preliminary and special determination as it is stated in the above mentioned Section 171. ----------------------

**III. FACTS AT STAKE.** The facts that have originated this presentation are as follows: -----------------------------------------------------------------------------------

1. Integra is a company that has been created to offer entrepreneurial counseling, guidance, and management to companies. At the same time, Integra also invest capital amounts in some companies they offer counseling to.--------------------------

2. Within the scope of this activity, Integra have invested irrevocable amounts in affiliated societies, reason for which Integra have received funds from Integra controlling companies located either in Argentina or abroad. ----------------------------

3. After a checking-up procedure, AFIP decided to object to aspects relative to capital investments from controlled companies, funds availability to controlled companies, supposed revenues that had been estimated only on the sole basis of banking deposits that had been performed during the aforementioned fiscal years, as well as travel expenses that, supposedly, were lacking vouchers thereof.-----------------------------

4. It should be noted that, during the checking-up and fiscalization procedure AFIP had performed, all and every vouchers, documentation, and the like had been submitted so that not only the certainty and transparency of all registrations and affidavits (*) involved were clarified but also the idea was that AFIP could not follow on calculating the presumed tax-related debt on the basis of presumptions. (* *In Argentina, returns are called "declaraciones juradas", that is "affidavits" because it is considered that a tax payer has been sworn to state the truth with regard to his/her business/taxable activities. Just in order to maintain the Argentine scope on this matter, whenever "affidavit/s" appears in this translation, the word should be construed as "returns", T's N.*) Anyhow, AFIP decided to estimate the monies due on the basis of legal assumptions that, however, are lacking the necessary features to be deemed to be serious, precise, and applying, a characteristic which is the very base for such assumptions to apply. -----------------------------------------------------------

5. AFIP consider that such challenge implies a rectification of the previous affidavits –hence, AFIP starts the ex officio determination procedure, and serve us notice of the above mentioned charges. --------------------------------------------------------------------





7

**COLEGIO DE TRADUCTORES PÚBLICOS
DE LA CIUDAD DE BUENOS AIRES**

República Argentina

Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L

6. On September 27, 2002, a prorrogation has been requested for Integra submitting their explanation. Said prorrogation has been granted –arbitrarily, however, as we will explain in the next chapter, for a shorter delay than the legal delay. --------------

7. On October 15, 2002 we have submitted not only the relevant explanation but also evidence, requesting AFIP to consider that the above mentioned affidavits were lawful –hence that AFIP's proceedings at investigatory stage of the trial should be filed in the archives. ---------------------------------------------------------------------- .

8. AFIP requested additional evidence, giving Integra an evidence-furnishing delay significantly shorter than the legally established delay. Anyhow, Integra has been able to comply in good and proper time and form, furnishing AFIP with the requested evidence on November 8, 2002.-------------------------------------------------------------

9. Eventually, on December 23, 2002, AFIP's Revision and Resources Division ex officio determined the incomr tax amount Integra was supposed to pay: AFIP made that decision on the basis that Integra-submitted evidence failed to demonstrate either the character of the unjustified supposed equity increases or the truthfulness of the supposed availability of funds in favor of third parties, or even the truthfulness of the representation expenses.--- ------------------------------------------------------------

10. This is why, against such regulation that has been issued within an annuled frame of reference, we apply for the revocation of this regulation, on the basis of the following arguments, with costs to be paid by the Argentine Treasury.----------------

**IV. MOTION TO DISMISS BASED ON THE VOIDNESS OF A LEGAL INSTRUMENT.**--------------------------------------------------------------------------

Pursuant to Section 171, Subsection (h) of Act # 11683/98, we hereby submit a motion to dismiss the above mentioned ex officio determinative regulation as well as the proceedings that set the basis for the proceeding at stake, if we take into account the number of irregularities as well AFIP's abusive attitudes that have been curtailing the right Integra enjoy to defend themselves thus putting Integra in an unequal standing with regard to other taxpayers that are subject to this type of ex officio determinative procedures. In this connection, the irregularities giving a basis for Integra to request that AFIP's procedure be deemed null and void are as follows:

**1. Domicile for tax purposes and domicile of choice**.--------------------------------

AFIP's first abusive attitude lies in not accepting, or recognizing, the legal residence or domicile of choice that had been chosen in view of the present file, as Integra



explained when they requested a prorrogation to answer the file submitted on September 27, 2002. Indeed, Integra acknowledge the wording of Section 3, Act 11683/98 and the implementing regulation thereof, dealing with the domicile for tax purposes that is also considered to be a domicile of choice for one thing. However, at the same time, Integra also take into account the wording of the penultimate paragraph of said Section 3 which reads / quote: Anyhow, as regards legal actions entailing that the possibilities forseen in Section 9, point 1, paragraph (b) of Decree # 618 issued on July 10, 1997, and related sections, be exerted, and also regarding the Chapter XI of this present Act: any change of domicile shall be considered to be lawful provided the new domicile is advised certifyingly and directly to the government agency involved / unquote. -------------------------------------------------

That is, the above mentioned quotation sets up a specific regulation as regards: the setting up of a domicile related to the administrative Judge in charge of the ex officio regulations, fine-related regulations, appeals requesting the reversal of a court's decision, as well as the role of AFIP as plaintiff in a tax-related executory proceeding.- - ---------------------------------------------------------------

In other words, to set up the domicile for tax purposes of an artificial person, as Integra are, the text of the first, third, seventh, and ninth paragraphs of Section 3, Act 11683/98 are supposed to be abode by, as well as the text of AFIP's General Regulation # 301. Now, however, those norms admit exceptions whenever a de officio determination is at stake: in a proceeding such as this one, the taxpayer involved is able to set a domicile through a convincing notification to the relevant authority. This ruling is due to the fact that problems related to administration or legal procedures could be attended to at either a CPA firm or a lawfirm that are attending to the needs of the taxpayer. To be sure, those domiciles differ from the seat of the taxpayer company's main and effective address –they respond, however to the principle of specialty of the domicile –i.e. specialized people residing at that domicile intending that the norm at stake be fulfilled. ---------------------------------------------

It appears to us that the Treasury's interpretation of the refuted regulation we are dealing with hereby –i.e. that not only a change of domicile must be performed pursuant to Regulation # 301 but also the new address has to be notified (thus registered) into the relevant administrative and/or legal proceedings, is unreasonable and excessive, thus unappliable –and why? because, should the norm be construed as





**COLEGIO DE TRADUCTORES PÚBLICOS
DE LA CIUDAD DE BUENOS AIRES**

República Argentina

Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L

our Argentine general revenue service wishes so this implies that a taxpayer has to notify twice the same legal action (changing domicile) separately however to the same person –i.e. AFIP. ------------------------------------------------------------------------

So, as we have stated previously, that paragraph is intended to allow a taxpayer to establish a special domicile so that said proceedings are taken care of. Otherwise, the fact that a taxpayer had to submit form F460/J with a new domicile for tax purposes each time he/she has to appear at a tax-related lawsuit, for example, could be deemed to be unreasonable as well as absurd. Actually, the National Treasury is aware that, in tax-related lawsuits –an exception stated in the penultimate paragraph of the aforesaid Section 3 resorting to Chapter XI of Title 1 of Act 11683/98,  says that a taxpayer establishes a domicile for his/her lawsuit-related presentations , thus the AFIP agents respect the domicile so established. Thus, if the law compares  this exception regarding general rules on a domicile for tax purposes to the other exception that deals with procedures such as ex officio determination proceedings, summary proceedings, and the relevant reconsideration proceeding, the Treasury is not supposed to make distinctions when the law does not make them –if not, the taxpayers'constitutional right to defense at trial is harmed.-----------------------------

In the present case, the attesting notification on the change of domicile with regard to the administrative cause was precisely the notification submitted by Integra on September 27, 2002: domicile was established (*written Argentine style, T's N.*) on Pasaje Pedro 520, of the city of Mendoza –a street address differing from the domicile for tax purposes. ------------------------------------------------------------------

Nevertheless, the National Treasury without abiding by the penultimate paragraph of Section 3 of the taxpaying procedure law, did not acklowledge the domicile that had been established as per the notification that had been submitted on September 27, thus making the decision to notify that the prorrogation had been accepted, based on the proceeding dated September 30, 2002, sending it to the domicile for tax purposes located on (*written Argentine style, T's N.*) Avenida San Martin 1102, 2nd floor, Office # 109, of the city of Mendoza. The result of those notifications was fruitless inasmuch as, pursuant to a report from the Argentine Mail, the notification was sent back to sender with a stamp on, reading: "Moved". --------------------------------------

The fact is that AFIP just did not do anything –they did not even send the the notification to the domicile advised by the taxpayer. So, Integra presented themselves



spontaneously on October 10, 2002, at the AFIP office of the city of Mendoza to read the file. Surprisingly, Integra had to be notified about the prorrogation obtained only two working day before the expiration of said prorrogation (when –as it shall be seen afterwards, Integra considered that the granted prorrogation was only due to expire on October 21). -------------------------------------------------------------------------------

A similar situation occurred with the regulation dated October 22, 2002 about additional clarification, and the notification of the determinative ex officio regulation which is challenged herewith. -----------------------------------------------------------------

This is a situation that clearly demonstrates the abusive attitude of the Treasury at denying Integra the right to establish a special domicile aimed at making easier for Integra to exerting their constitutional right of defense against the above mentioned ex officio regulation inasmuch as Integra was only granted two days to submit their answer, as well as submitting their evidence in this connection. ------------------------

Now, it should be noted this is not the first time that our general revenue office boasts abusive attitudes as could be ascertained, for example, in a case entitled "Pesquera Sur SRL" (a fishery), a case that had been solved precisely by this Court "A" on May 8, 2002 (See the Tax Register 2002 B, folio 1931). In connection with the Pesquera Sur case it can be read / quote: If AFIP had a reasonable doubt that impulsed them to require the taxpayer involved to adequate their domicile for tax purposes on the same day that the notification was to be submitted pursuant to norms appearing on Section 100, Subsection (b) of the aforesaid Act –hence AFIP was aware that the company had changed the address where their main office was located: in this connection, AFIP should have sent another notification to (*the new domicile, T's N.*) instead of insisting the notification to be sent to the former domicile the revenue service proper was no longer accepting.../unquote.- - - --------------------

In other words, if AFIP is aware that a taxpayer has changed the street address of his/her management office –all the more so because the Argentine Mail had been sent back a notification to the sender with a stamp reading "Moved" on. That is, in our case, the determinative regulation notification should have been sent to the domicile AFIP was aware of inasmuch as the new address had been duly notified in the case instead of insisting in a notification –even though pursuant to the wording of Section 100, Act 11683/98, sent to the former domicile. At least, and pursuant to Regulation 301, AFIP should have required Integra to rectify their domicile-for-tax-purposes





11

**COLEGIO DE TRADUCTORES PÚBLICOS DE LA CIUDAD DE BUENOS AIRES**

República Argentina                                                                Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L

street address. Instead, nothing was done, and our revenue service went on with their abusive attitudes that plainly curtail the right of Integra to a fair defense. --------------

In this connection, we do request that the present proceedings are declared null and void in view of Integra being denied the right to a fair defense during the whole ex officio determinative procedure. ----------------------------------------------------------

**2. An irregular granting of a prorrogation request.**----------------------------------

The second proceeding abuse AFIP has incurred into, within the frame of reference of the Integra case, was the too short prorrogation period granted for Integra to answer the ex officio determinative proceeding: indeed, it could be said that the prorrogation granted to Integra exceeds the possibilities that Act # 11683/98 allows our general revenue office. Actually, Section 17 of the above mentioned Act reads /quote: The proceeding for any ex officio determination shall be started by the Administrative Judge in charge through a notification sent to either the taxpayer or the person who is responsible for the taxpayer administrative affairs as well as his/her impugnments or charges, so that, within a 15-day lapse of time (*"15" is repeated in letters –fifteen- in the Spanish text to avoid that anyone could think that 15, in figures, could be a typo, T's N.*), <u>a lapse of time that it shall be possible to extend for another, similar lapse of time, only once</u> (*underlined by the lawyer in charge, T's N.*) so that either the taxpayer or his/her proxy be in a position to submit the answer in writing, together with evidence related to the taxpayer's rights / unquote. --------------------------------



This paragraph tells us that our general revenue office enjoys a mixed possibility, discretionary however normalized, to grant the taxpayer the prorrogation so that he/she is in a position to answer.-----------------------------------------------------------

Actually, when reading the underlined line above, we construe that AFIP shall be able to extend the initial 15-working day delay –or not, a point that allows us to capture clearly the discretion the law grants the general revenue office. However, should AFIP decide, at their own discretion, to extend the delay such discretion is now under the rule of the same legal text –this is why the Act states that the prorrogation must be granted for "another, similar lapse of time" –that is fifteen working days. ------------

Under no viewpoint whatsoever can the interpretation of the general revenue office be deemed to be reasonable, inasmuch as the general revenue office reasoning seems to be based on a principle suggesting that "whoever can do the most can do the least" –in other words, our general revenue office seems to be able to either deny the

prorrogation or give it for the lapse of time the general revenue office pleases. Should we follow this trend of reasoning, it could be said that AFIP could grant an only-one-day-prorrogation which, if notified within the administrative, abusive style entails, straightforwardly, the flagrant impossibility for the taxpayer to submit his/her answer.

-------------------------------------------------------------------------------------

Resuming, should AFIP decide to grant the prorrogation, once they have made this decision the prorrogation has to be granted (and not, "could be" granted) for a full 15-day delay. There is no moot point here –that, for instance, the general revenue office "can do the most". The fact, here, is that AFIP can either grant the prorrogation or deny to grant it. Otherwise, if they grant any prorrogation for any lapse of time whatsoever, this generates a state of lack of judicial safety inasmuch as the taxpayer involved is unaware of the lapse of time he/she has been granted to submit his/her answer accordingly. -------------------------------------------------------------------------

This abuse was embodied in the regulation dated September 30 –surreptitiously notified on October 10, as we have just seen above –hence, such regulation is null and void insofar as it violates Section 17 of Act # 11,683/98, as well as the right to defense at trial as it is established in Section 18 of the Argentine Constitution. Actually, Integra could only use a very short lapse of time –i.e two working days, to submit their answer and offer evidence. This shows clearly the abusive attitude of the AFIP's service hindering Integra to demonstrate their rights. ----------------------------

In this connection, we do request that proceeding to be declared null and void. -------

**3. The delay to submitting evidence has been determined arbitrarily.** -------------

In a similar sense to the procedural abuse that has been just described above, on the twenty-second day of October, year two thousand two, a regulation is issued, accepting the evidence offered by Integra, allowing, however, a 10-day delay only for Integra to submit all the evidence they see fit –a delay really inferior to the usual 30-day customarily allowed by law. Such a regulation was notified to Integra on the twenty-four day of October, as pointed out in point 1 above. Insofar as Integra was informed a few days afterwards, the deadline was all the more limited. ---------------

In this connection, we want to stress as well as impugn the awarding of a procedural delay contrary to the wording of the law as is that the subject matter hereof –an impugnation that, jointly with the precedent ones, should suffice to cause the whole nullity of the whole procedure.-----------------------------------------------------------





**COLEGIO DE TRADUCTORES PÚBLICOS
DE LA CIUDAD DE BUENOS AIRES**

República Argentina

Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L



Indeed, the Section 1 of the regulation dated on the twenty-second day of October is contradictory: if the Treasury accept the whole evidence offered by Integra (no evidence-related matter whatsoever had been rejected) there is a flagrant incoherence if the issuance of an action aimed at obtaining additional evidence that instead of suggesting that more evidence is needed when the existing evidence is accepted. Besides, accepting Integra-offered evidence supposes that a delay shall be necessary to produce the evidence needed –especially with reference to: a) an accounting proof by expert witness, b) an information-based evidence, and c) a documentary evidence pertaining to third parties which in turn supposes that documents are to be requested through letters rogatory. ------------------------------------------------------------------

So, pursuant to Section 17, first paragraph of Argentine Act # 11683/98, if the responsible person offers evidence, this supposes the opening of a proof-related lapse of time. It should be noted that in the legal norm in force before 1978 –which regulated the procedure for ex officio determinations, a specific delay was established also for the production of proofs offered by the responsible person. The legal modification (*that is, Act # 11683/98, T's N.*) did not eliminate the proof period in this type of proceedings –all the more so if we consider the importance of evidence offered at this stage that is related to the evidence likely to be submitted during the trial brought to Argentina's Treasury Court (See Section 166 of Act 11683/98), on the one hand. On the other hand, Decree # 13997/79 –i.e. the implementing regulation of the Argentine Act on Tax Procedure, has established the delay for the proof offering time in its Section 35, first paragraph and this delay reads thirty days, apt at being extended for another, equal, lapse of time.------------------------------------------------------

However, AFIP insisted in their procedural abuses, allowing an exiguous 10-day delay to produce the evidence. To which we can add that, even though the regulation at stake accepted the whole evidence offered by Integra, in the determinative regulation, however, AFIP considered that the offered evidence was useless and inadequate for the case to be solved. A contradiction annulling automatically the ex officio determination administrative procedure. -----------------------------------------------

Resuming, once again Integra's right to defense at trial pursuant to due process is attacked –due to the fact of the exiguous lapse of time Integra was awarded to submit proofs that are neither in possession of Integra (nor should be in possession of Integra). However those are proofs that not only Integra who offer those proofs, but

also AFIP who request them consider that there is an important need for receiving them so that case at stake could be solved objectively.--------------------------------------

Thus, from what has been seen herein, it can be stated that the ex officio determination proceeding was affected by irregularities. Such irregularities have invalidated the requisite of formality, hence curtailing Integra's right to defense. In this connection, this impugned regulation has to be disqualified on the grounds of nullity, and revoked –that we are applying for herewith. ---------------------------------

## V. THE EX OFFICIO DETERMINATION IS IMPUGNED. ----------------------

In the first place, it should be noted that the determinative regulation does not challenge the origin of the matters stated in the taxpayer's affidavit –with regard to irrevocable contributions received from other companies and paid to other subsidiaries – what is challenged is the proof dealing with the origin and the beeing of matters at stake. In this connection, we understand it is necessary to put forward the following arguments to support this impugnation.-----------------------------------------

**1. An estimate performed on an alleged basis cannot be applied.** -----------------

Argentina's national Treasury has performed an ex officio determination on an alleged basis based, in turn, on the supposed lack of probative elements. Beyond the *per se* determinations the points of which are to be discussed herein below, choosing to carry on an ex officio estimate upon an alleged basis is both erroneous and arbitrary a decision. Actually, besides Integra's accounting evidence as well as the number of in-depth revisions that have been carried on by AFIP, an important documentation has been offered –and does exist- to support all and every transactions performed by Integra –transactions that are real, both in fact and *de jure*, beyond any possible accounting error or any lack of accounting books likely to credit those transactions. -------------------------------------------------------------------------------

AFIP in the regulation we impugn, quote the decision of the Judge dealing with a case entitled "Oyhamburu": in this connection, AFIP say that an ex officio estimate is warranted whenever the Treasury is missing accounting registers "or" any documentation. In our case, Integra possess an abundant documentation apt at substituting for the lack of accountings registers. If we add the fact that an accounting expertise has been offered by Integra, it cannot be said that an ex officio determination established on an alleged basis could be adopted legally.----------------





**COLEGIO DE TRADUCTORES PÚBLICOS
DE LA CIUDAD DE BUENOS AIRES**

República Argentina                                                    Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L



Again, quoting jurisprudence –as we have pointed out in our answer, seems to be important really. Thus, let us point out to a case entitled "Funes, Orlando L. TFN Chamber B, August 14, 1973, published in "Procedimiento Fiscal", Vol. II, Buenos Aires, Errepar Publishers. Quote / Neither the sound determination nor the alleged determination are left to the discretional criterion of the Treasury: on the contrary, those determinations depend on circumstances likely to allow the Treasury to determine the amount to be paid. The general rule has to be the definite determination, based on the direct knowledge of the taxable amount. Now, any determination founded on an alleged base shall be adopted as an exception /unquote. In that sense, the fact that a taxpayer keeps books the legal way is of utmost importance. In other words, if the rule says that any ex officio determination be rooted on a definite base, this rule keeps being in force whenever the bookeeping practice is performed legally. So, jurisprudence said (in a case entitled "Iglesias y compañía" TFN, Chamber C, December 28, 1984, "Procedimiento Fiscal", Buenos Aires, Errepar Publishers) quote: Any determination practiced by the general revenue office on the basis of an alleged method has to be overruled provided the taxpayer does not keeps boods but, instead, offers proofs that demonstrate the inaccuracy of the abovementioned determination, inasmuch as any determination performed on a definite base is established upon a sound knowledge of the taxable matter. So, in principle, the foregoing definite determination shall be compulsory when a taxpayer keeps either books or tax record books lawfully and legally, plus the supporting documentation thereof / unquote. ------------------------------------------------------------

Again, the ex officio determination is another attack against the proceeding insofar as AFIP has indulged in three irregularities, to wit:

a) AFIP did not refute either the affidavits or the proof submitted by Integra. AFIP only stated that they had been unable to ascertain some hypotheses. -------------------

b) AFIP ex officio determined the tax mount based on conjectures without taking into account the remainder of the proof submitted by Integra during the inspection, as well as during this proceeding. ------------------------------------------------------------

c) AFIP considered that the proof submitted by Integra as their answer was both unnecessary and inadequate to solve the case at stake. ----------------------------------

Of course, such a situation beais on the way Integra has to resort in order ot defend themsalves, insofar as the Treasury, by making a presumed estimate of the tax

amount to be paid transfer the burden of proof so that, now, it is the taxpayer, and not AFIP, who is supposed to prove what has already been proven –that is, whether the affidavits are true or not. Now, transferring the burden of proof, due to the lack of any refutation against the whole documentation that has been submitted by Integra does not harmonize with a reasonable way to do things in the administrative realm –hence, such a proceeding pollutes any administrative action or proceeding performed under such premises. Indeed, jurisprudence has stated (in case entitled "Pedro Oyhamburu & Omar Quiroga Sociedad de Hecho" TFN, Chamber D, August 7, 87, published in "Procedimiento Fiscal", Buenos Aires, Errepar Publishers) –a case, by the way a slight mention of which has been done previously in this writ- quote / The Treasury cannot resort to the presumed determination system to establish a basis allowing the Treasury to nullify a taxpayer's affidavits. Instead, the Treasury has to manage on the contrary –that is, the needed conditions to open the door, so to speak, towards an ex officio determination on presumed bases are, ss: impugning the validity of the taxpayer's affidavits on the basis that such affidavits lack a supportive legal basis, coupled to the lack of elements allowing to determinate exactly the actual taxable amount to be paid / unquote. ---------------------------------------------------------



Consequently, both the proceeding that has been started, and the regulation issued are null and void on the grounds of the procedure chosen by the general revenue office to determining the tax due –if, mainly, we take into account the number of proofs offered that shall be reinterated in the relevant chapter of this impugnation. -----------

**4. Irrevocable contributions  paid to Integra by their controlling companies.** ----
In the impugned reglamentation, our national Treasury object three points regarding the origin of the calculation that appears as being irrevocable capital contributions paid to Integra by the following companies, namely: Vetalir Internacional S.A., Resetel S.A., and Connolly Company S.A. -----------------------------------------------
In the first place, the Treasury object the different ways such contributions have been included if compared to contribuytions paid by Integra Financial Service LLC, Supercanal Holding S.A., and MSO Supercanal S.A.. In this connection, it is worth clarifying that –beyond any bookkeeping practice, which is a purely formal, and informative matter about the situation of a given company, the Treasury is not supposed to disregard the documentary as well as judicial support in favor of the actual payment of irrevocable capital contributions by the above mentioned



**COLEGIO DE TRADUCTORES PÚBLICOS DE LA CIUDAD DE BUENOS AIRES**

República Argentina

Ley 20.305

17

A C T U A C I Ó N   P R O F E S I O N A L



companies. Indeed, there exist written commitment, as well as minutes of the meetings of the Board of Directors from the above mentioned contributing companies, as well as from Integra that support the effective existence of the contributions at stake. Moreover, in a majority of cases, the bank transferences for said amounts are available. Thus, even though those contributions had been entered in the books as "Other debts" instead of "Various deposits" or "Irrevocable contributions", this fact is no hindering a factor to the point to that we could not consider those monies as irrevocable capital contributions paid to Integra- a concept, at that, differing substantially from the idea of an unjustified equity increase, as our Treasury insist on. ----------------------------------------------------------------------------

Even though we consider the bookkeeping entry as the actual and valid support of the transaction a stake, registering those funds as "Other debts" excludes any possibility to consider this entry as evidencing an unjustified equity increase. The equity increase is justified as a social liability –i.e. capital-related, with regard to the companies that, directly or indirectly control Integra. ----------------------------------------------------------

Secondly, the lack of transparency as regards the way the three above mentioned companies have resorted to in order to perform their capital contribution is objected. As regards the contribution by Vetalir S.A.: a) our national Treasury quote the minutes of the seventh Integra Shareholders Meeting dealing with the reimbursement of a loan to Vetalir S.A. but: b) our national Treasury omit considering the minutes of the second Integra Meeting of the Board, where a minute dated on the twenty-fourth day of July, year two thousand, mentions a memo from Vetalir S.A. wherein Vetalir S.A. request Integra to enter liabilities as irrevocable capital contributions in the books. ------------------------------------------------------------------------------------

Thus, should we adopt the criterion fostered by our national Treasury, a criterion assuming that, actually, Integra maintain a liability with Vetalir S.A. –or should we adopt the criterion that takes the whole Integra company-related documentation accounting for the conversion of said liability into a capital, in both cases, we are facing an equity increase that is perfectly justified –hence, this sum must not be considered as an income subject to tax as the impugn regulation states. ---------------

As regards the contributions paid by Connolly Company S.A., and the alleged contradictions that could have been committed when defending the point, the following considerations are in order: Firstly, the contributions that Connolly

Company S.A. have paid to Integra do have a principal aim, namely: an amount that Integra was to invest in a winery group by the firm name of Grupo Vitivinicola de Tupungato S.A., a fact arising from the documentation submitted previously, that does not evidence any contradiction whatsoever as the Treasury state. Connolly Company S.A. participates jointly with Integra in a joint investment in Grupo Vitivinicola de Tupungato S.A., and said participation has been embodied by means of an irrevocable capital contribution from Connolly Company S.A. to Integra. The documentation pertaining to Connolly Company S.A. explaining this situation - particularly the minutes of the Board of Directors dated the twenty-first day of September one thousand nine hundred ninety-eight (our Treasury state that these minutes have not been submitted... even though our Treasury is knowledgeable about these minutes) –this documentation has been submitted as a plain –i.e. not certified- copy inasmuch as it is a documentation pertaining to third parties whose residence is abroad, on the eighth day of November, year two thousand two. -----------------------

With regard to the way the irrevocable contributions (either cash or through banking transfers) have been performed by either Resetel S.A., and Connolly Company S.A. we repeat what has already been stated: such contributions have been performed partially through banking transfers or direct cash. This type of contribution has been disregarded by the Treasury in their impugned regulation... even though the Treasury had accepted it with regards to the contributions paid by Supercanal Holding S.A., Thus, not only there is no contradiction whatsoever in Integra's statements but also practising capital contributions in cash had been accepted by the Treasury in a different opportunity.----------------------------------------------------------------------

So, from our presentation, as well as the documentation to be submitted in the present case, there exist enough elements likely to consider that the sums paid by the three above mentioned companies are irrevocable capital contributions in view of a future call for shares. Our national Treasury proper acknowledge the lack of reglamentation in the (*Argentine*) Act on Commercial Companies as to the formalities that are to be abided by whenever performing a contribution. Hence, if there exist supporting documentations from both parties –the contributing company, and the capitalized company- those contributions have to be considered truthful and valid.----------------

In that sense, any analysis of the sums contributed by said three companies –an analysis, at that, our Treasury keeps delving in, becomes both unnecessary and





**COLEGIO DE TRADUCTORES PÚBLICOS**
**DE LA CIUDAD DE BUENOS AIRES**

República Argentina

Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L

unfounded. However, even though those contributions are considered as liabilities, those contributions shall keep being equity increases, justified by Integra –hence they have not to be computed as if they were Integra's net income. -------------------------

Objections about the receipt slips for funds received that failed to comply with the norms of Regulation # 3419 do not imply that said funds had not been transferred actually, and, moreover, do not imply that they have nothing to do with the above mentioned transactions. In the first place, it has to be pointed out that the type of financial operation performed –that is, receiving irrevocable capital contributions is a matter out of the reach of said Regulation # 3419. Thus, receipt splits to be issued do not require that the formalities the administrative Judge requires. Now, even though such receipt splits were to be required, if the rules in force for invoicing and recording operations had not been fulfilled with, indeed in such a case the fines forseen by the law should be applied. This situation, however, is very different, and does not entail so onerous an amount to be applied should banking transfers be considered to be income subject to task –that is, this a situation differing from demanding not only the tax payment but also a fine for having apparently omitted to pay the tax.--------------------------------------------------------------------------------



Both deposits as well as withdrawals where people are not identified on have to be completed, or supported, by the company and bookkeeping documents pertaining to both the contributing companies and Integra, clarifying the transferred amounts, and the motive or reason for such banking operations. So, the existing proof as well the offered proof allow every contributor to be identified as well as the motive or reason for such transfers. --------------------------------------------------------------------------

The fact that those funds have been entered before the capitalization thereof (as this was the case with Connolly Company S.A.) does not mean that those funds are not irrevocable contributions. This alleged "lack of formality" is explained by the fact that the companies involved in the objected operations pertain, all of them, to a sole economic group. A situation that allows a certain flexibility as regards not only their contributions but also the fact that those transfers have been performed in cash, at least partially. Besides, in some cases the transferred sums –at a first stage, were meant to be considered as loans. After some economic difficulties, and taking into account that those companies pertain to the same economic group caused that, in any and every case, the investor companies were to share Integra's entrepreneurial risk so

said contributions should be considered as capital contributions.So, the generalizing concept our national Treasury would apply –i.e. that sums at stakes were loans, could only be applied to the first stage of those transfers.----------------------------------------

In this connexion, we would like to repeat what we have pointed out to in our answer, namely: the control over unjustified increases in equity, that has been stated in the decisions regarding a case entitled "Ortolani", and a case entitle "Oddone", has been, however, flexibilized in a case entitled "Trebas" the judicial decision of which was issued by Argentina's Supreme Court of Justice. The Supreme Court sustained that / quote the Argentine law only requires –as regards- equity increases stemming out of capital contribucions coming from foreign companies, the crediting of those funds (of course, by means accepted by the (*Argentine*) federal law, the individualization of the contributors. It should be noted that the (*Argentine*) federal law does not requires that a proof should be furnished about those invested funds have been genereted in activities or capitals pertaining to a foreign jurisdiction / unquote. ---------------------

In the case at stake, Integra has individualized the contributors to the irrevocable capital contributions in view of a future call for shares –namely Coonnoly Company S.A., Resetel S.A., and Vetalir International S.A.. At the same time, Integra furnished, and is furnishing again the necessary evidence so that the banking transfer of those funds be credited. ------------------------------------------------------------------

Finally, may we take the liberty to reiterate what we have pointed out in our answer with regard to the insufficiency, and lack of reasonability our Treasury demonstrate by performing an alleged income tax estimate on the only basis of banking deposits related to sales, without taking into account not only data offered by the taxpayer during the inspection but also considerations worded by the Treasury proper over the last aspects the Treasury reject when impugning the irrevocable contributions and their relationship with the banking transactions performed by Integra. In this connection, reading some jurisprudence ideas is worthwhile /quote The sole verification of the existence of banking deposits, the amount of which exceed the amount of declared sales, cannot, *per se*, be considered as an assumption on which basis those amount differences have to be taken as the evidence of undeclared sales in order not to pay the value added tax" (in case entitled "Ledesma, Amalia" CNFED. CONT. ADM, Chamber 1, September 16, 2000, and case entitled "Confecciones





**COLEGIO DE TRADUCTORES PÚBLICOS DE LA CIUDAD DE BUENOS AIRES**

República Argentina

Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L

Roley" CNFED. CONT. ADM, Chamber 4, August 6, 1992, published in "Procedimiento Fiscal", Buenos Aires, Errepar Publishers). ----------------------------

On the basis of the foregoing, and the evidence to be offered in the relevant chapter, we request that the ex officio determinating be declared null and void inasmuch as the equity increases pointed out by our national Treasury are justified as capital contributions. ----------------------------------------------------------------------------

**3. Contributions performed by Integra in their controlled companies.** -----------

The ex officio determination says that the irrevocable capital contributions performed by Integra in different companies Integra assess, and control juridically, are only funds disposals in favor of those companies, in which case those monies would accrue an interest subject to the income tax payment. In this connexion, the administrative Judge considered that a) either there were no proofs supporting the fact that those contributions had been performed or b) that the existing proof was of a unitlateral sense (i.e. that it resorted to Integra only). ------------------------------------



The AFIP regulation is both unreasonable and arbitrary on the following grounds. ---

In the first place, let us point out that not only Integra offered company documentation taken from their books but also Integra requested that the companies that had been in receips of the above mentioned funds declare the actual destination those companies had given to the funds contributed by Integra. Hence, if AFIP only declare that the proof offered by Integra is useless or inadequate, or that the minutes of Integra's meetings of the Board of Director are printed in a different font... the only possible conclusion is that we are facing an arbitrary administrative action. -----

Thus –as it will be observed in the chapter dealing with proofs, we are dealing with more and more proofs telling us that Integra did not used funds in favor of third parties in such a way that those funds could be subject to Section 73 of the (*Argentine*) Act on Income Tax. -------------------------------------------------------------

Besides, it is worthwile considering the fact that the companies receiving capital contributions from Integra pertain to the same economic group Integra is a member of. So, contributed funds cannot be considered as transferred to a third party alien to Integra –instead, it must be understood that those transfers are in keeping with performances that are necessary for the economic development of the group. Such a situation excludes the application of the above mentioned Section 73. It has been so understood by Chamber D of this Treasury Court, as it can be read in decision taken

in the case intitled "Fiat Concord S.A." on October 16, 2002, as published in the
Argentine journal "Revista Impuestos" I (1):40, 2003 / quote So, from the standpoint
of the economic actuality, and taking into account the prominent participation of Fiat
Argentina S.A. in the capital of the appealing party, it should be understood that both
are related companies –indeed, it could safely be said that they are practically a sole
company considered as an economic unit, in which, undoubtedly, Fiat Argentina is
the controlling company, reason for which it cannot be deemed to be "a third party"
pursuant to the terms and conditions of Section 73 of the Act on Income Tax.
Moreover, it must be pointed out that, even though both companies have, separately,
an artificial personality, and a "tax personality" of their own, they are members of an
economic group so that the alleged interests our Treasury in intend to tax upon one of
both companies would become a deductable expense for the controlling company,
and no tax evasion would have been committed –in short, tax would be neutral /
unquote. ----------------------------------------------------------------------------------

Thus, the principle of economic reality –as appearing on Section 1 and Section 1 of
(*Argentine*) Act 11683/98, is the principle to be applied here –even though when
companies are separate artificial persons. So, the adjustment performed by AFIP
based on the above mentioned Section 73 is both arbitrary and unfounded, if reality
demonstrates that this is an only group that has decided to operate through separate
companies in virtue of economic strategies –that does not mean we are facing "third
parties". Hence, on the basis of the foregoing motives, we request that, to this point,
the ex officio determination be revoked, with costs.------------------------------------

**4. Representation expenses.**----------------------------------------------------------

Expenses that have been impugned for the fiscal year 1999, entered in the books as
"Travel expenses", "Payments to defray moving expenses", "Snacks" and "General
expenses" are related to expenses related to the Chairperson of Integra, Dr. Jose-Luis
Manzano, that have been fully supported by credit card statements attached hereto.--
Even though, as far as AFIP are concerned, they do not object to the origin of those
expenses that are, precisely, expenses likely to be tax deducted: what AFIP do object
in the ex officio determination is that such expenses do not correspond legally to the
company activity –hence, they cannot be deduced, a statement that is both arbitrary
and does not make any sense. From the analysis of the credit card statements attached
hereto, as well as the presentation and justification of accounts the Chairperson of





**COLEGIO DE TRADUCTORES PÚBLICOS**
**DE LA CIUDAD DE BUENOS AIRES**

República Argentina                                                                                                    Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L



Integra presented to the company accounting area, it can be seen that a great majority of expenses are related to business trips and events the Chairperson attended to taking care of the company's interests. This is why those expenses actually foster the source of the company benefitS. This is also why we request Your Honor to disregard the adjustment performed by the administrative Judge. -------------------------------------

**VI. SUMMARY.** -------------------------------------------------------------------------

**1. No violation of the tax laws.** ---------------------------------------------------------

If we observe the considerations presented in the foregoing chapter, it can be clearly seen that the affidavits submitted by Integra are exact and lawful. Consequently, no tax has been omitted, thus the violation of the tax law stated in Section 45 of the (*Argentine*) Tax law # 11683/98 is of no application here, reason for which we request Your Honor to disregard the fine that, allegedly, was to be applied. ----------

**2. Excusable error.** Should it be considered that an omission had been committed as regards the Income Tax procedure, we nonetheless request that the fine at stake would be disregarded inasmuch as Integra would have committed only an excusable error –that is, considering that the abundant documentation attached hereto was a sufficient basis for supporting the returns on Income Tax as previously done. That is, Integra understand that, pursuant to the norms we construe to be in force, the fact of maintaining a legal bookkeeping way plus the abundant documentation AFIP are aware of, and have reviewed, those steps were sufficient to understand some incomes, that is according to the way they had been entered in the books. ----------------------

At the same time, the number of jurisprudence quotations presented in this answer could help us to understand why Integra considered that the proofs they had were sufficient for a fair determination criterion on Income Tax to be applied on their affidavits. Thus, if there are contradictory decisions, it could be appropriate to resort to such considerations as /quote contradictory jurisprudence causes us to thing that there has been an excusable error committed when applying the law / unquote (in a case entitled "Frutas Nahuel S.A." TFN, Chamber C, September 19, 1974, published in "Procedimiento Fiscal", Buenos Aires, Errepar Publishers). -------------------------

Beyond the interpretation of jurisprudence, it should be noted that, mainly, Integra had committed a factual mistake inasmuch as –being in possession of elements needed for the registration be entered in the books- such circumstances are alien to a possible, erroneous application of the law. This is why the jurisprudence quoted by

the administrative Judge as regards "the darkness of the law" cannot be applied here. Here, we are dealing mainly with a factual mistake, not a mistaken belief about the law. --------------------------------------------------------------------------------

Consequently, we request Your Honor to revoke the fine at stake. ---------------------

**3. (*Argentine*) Decree # 1384/01. More lenient criminal statute.** --------------------

Insofar as Section 1 of Decree 1384/01 has exempted the fine that had to be applied, if the taxpayer had regularized his/her tax, and amounts due as of September 30, 2001, we understand that the same benefit has to be applied to Integra –this, because the fact we are dealing with, a legal norm –that is, the above mentioned decree, has been enacted. Indeed this decree is a more lenient criminal statute that has to be applied to Integra –if not, we would be facing a violation of the principle of tax equality that favored the taxpayers who adopted the payment of their debt by installments accepted by Decree # 1384/01. ---------------------------------------------

When AFIP state that the requisites established in Section 1 and Section 2 of Decree # 1384/01 do not apply to Integra, anyhow we sustain that such sections do apply inasmuch as, evidently, in this case, and in principle, the payment had not been performed since it was understood it did not apply. --------------------------------------

Thus, should we hypotesize that our previous arguments are not accepted, anyhow we request Your Honor to apply the more lenient criminal statute on behaf of Decree # 1384/01. --------------------------------------------------------------------------------

**VII. PROOF.** -------------------------------------------------------------------------------

**1. Admissibility of proof. Unconstitutionality of Section 166, second paragraph or (*Argentine*) Act # 11683.** --------------------------------------------------------------

Before offering proof, and taking into account that, in the plea brought before the Province of Mendoza Area of AFIP, a proof that, to Integra'criterion, was important for solving the case at stake, coupled to the fact that we had not proofs origined abroad, we beg Your Honor to accept the proof presented under VII.3, inasmuch as Your Honor being aware of this proof is an essential fact for solving this cause within the parameters of objective truth of paramount importance in any administrative proceeding. --------------------------------------------------------------------------

Of course, this paragraph would not be necessary but for a reformation to the above mentioned Section 166 of Act 11683 performed by (*Argentine*) Act # 25239. Indeed, Act 25239 vulnerates the right to defense at trial when limiting the exceptions stated





**COLEGIO DE TRADUCTORES PÚBLICOS DE LA CIUDAD DE BUENOS AIRES**

República Argentina

Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L

in Section 166, the offering of different proofs, or new proofs differing to the proofs that had been submitted to AFIP previously. ---------------------------------------------

In the case at stake we request Your Honor to approve the new proof submitted inasmuch as this proof could contribute to determine the needed, objective truth for a fair resolution of this case. -------------------------------------------------------------------

Indeed, the whole proof is needed to demonstrate how the capital contributions had been entered in the books, and how the representation expenses had been deducted. -

In view of the objective truth aim that has to be prominent in any administrative act, we do beg Your Honor to admit the proof herein below –or, if not, we do beg Your Honor to requiere more information to arrive to the objective truth the AFIP proceeding is lacking. ----------------------------------------------------------------------

Finally, if we hypotesize that Your Honor is to reject the offered proof, we request that Your Honor declare the inconstitutionality of Act #25239 inasmuch as this Act reforms the second paragraph of Section 166, Act # 11683/98 in a way that vulnerates the right of Integra to defense at trial, acknowledged in Section 18 of the (*Argentine*) constitution. Indeed, as it has been explained before, this proof is essential to justify the arguments submitted by Integra in this appeal –arguments, at that, that Integra has not been able to expose fully during the ex officio determination proceeding carried on by the Province of Mendoza Area of AFIP. In other words, if this proof is not admitted, we shall not be in a position to support the facts submitted in the foregoing chapters, thus making this defense useless, and leaving this proceeding without the objective truth likely to contribute to a reasonable, fair solution. ----------------------

In this connection, it should be pointed out that Chamber I of the (*Argentine*) National Court of Appeal with jurisdiction on the Federal Administrative Litigation matters has accepted the testimonial proof that had not been offered at the administrative part of the procedure (See case entitled "Nainstein, Claudia Andrea", dated on July 5, 2001, published in "Doctrina Tributaria", Buenos Aires, Errepar Publishers, 2001, page 747). --------------------------------------------------------------

Moreover, our Treasury, in the ex officio determination, requires that documents supporting the capital contribution be credited. This is why, to comply with AFIP, submitting the proof offered in V.3 is important. -------------------------------------------

This is why we beg Your Honor to accept the whole proof as stated in point 3 herein below. --------------------------------------------------------------------------------------



**3. Proofs coming from abroad.** ------------------------------------------------------------

Insofar as some of the companies involved in determining Integra's amount of tax payment are located abroad, the proofs stating the origin of the funds that have been so contributed must be requested abroad. --------------------------------------------------

In that sense –with regard to any proof that has to be produced abroad- we have to resort from Section 369 to Section 374 of the (*Argentine*) Civil and Commercial Procedural Code (*Spanish acronym CPCCN, T's N.*), a code which is applicable to proceedings brought before Argentina's Treasury Court, as per Section 197 of Act # 11683/98. ----------------------------------------------------------------------------

This is why we hereby apply to fulfill the requisites needed for obtaining proofs abroad, as stated in Section 369, and Section 370 of the CPCCN. ----------------------

So, with regard to the manifestation of the fact to be proven in this case, what it is tried is crediting that Vetalir International S.A., and Connolly Company S.A. had funds in their equity, and that such funds have been transferred to Integra to perform capital contributions to a better development of Integra.--------------------------------

So, the proof of these facts is essential for the present case inasmuch as the idea is checking up the origin of the contributed funds as well as the contributing party, plus banking transfers performed, and the destination of those funds. ----------------------

In that sense, a request has to be sent to the Oficina de Sociedades de la Republica Oriental del Uruguay (*The Uruguayan Registration Office of Corporations, T's N.*) so that said Office declare that both Vetalir International S.A., and Connolly Company S.A. are existing businesses, and also requests have to be sent to said companies so that they submit documents, and advise about the funds transfer to Integra. A measure, at that, supporting what we declare but, in AFIP's opinion, is a moot point.-

**3. Proof offering.** --------------------------------------------------------------------

We offer the following proof that supports my right, besides the administrative dossier that gave origin to the regulation that has been appealed, that our Treasury shall have to surrender pursuant to Section 169 of Act # 11683/97, and Section 25 of the by-laws of Argentina's Treasury Court. -------------------------------------------

**A. Documental proof.** ------------------------------------------------------------------

- Vouchers of international banking transfers issued by Banca Nazionale del Lavoro S.A.------------------------------------------------------------------------------

- Bank accounts statements issued by Banco de Prevision Social S.A.-----------------





27

República Argentina

**COLEGIO DE TRADUCTORES PÚBLICOS DE LA CIUDAD DE BUENOS AIRES**

Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L



- An Agreement for Capital Contributions between Integra Consultores y Servicios S.A., and Connolly Company S.A., dated September 18, 1998. ------------------------

- We offer also the whole supporting documentation (bookkeeping entries) corresponding to fiscal years 1998 to 2000. Inasmuch as this documentation is kept in sixteen boxes, it is not possible to photocopy all the papers involved to be addeed to these present. This is why Integra offers the following alteranative to solve the tax problem at stake: (i) either the sixteen boxes are kept at Your Honor's disposal, or (ii) the accounting expertise is carried on as offered by Integra in the present appeal. ----

**2. Documentation pertaining to third parties.** ----------------------------------------

- Requesting Vetalir International S.A., Connolly Company S.A., and Integra Financial Services LLC to gather certified copies (bearing the Apostille of The Hague Convention, 1961), of the whole company documentation (including legal, commercial, and accounting documentation) confirming: (i) the actual existence of those businesses as companies that have been legally constituted in their respective countries; (ii) funds transfers to Integra Consultores y Servicios S.A.; (iii) the accounting procedures of such transfers in favor of Integra Consultores y Servicios S.A., (iv) advices to Integra Consultores y Servicios S.A. with regard to the use of such funds transferred as irrevocable capital contributions on behalf of future calls for shares. ----------------------------------------------------------------------------------

- Requesting Resetel S.A. to surrender certified copies of the whole company documentation (including legal, commercial, and accounting documentation) confirming: (i) the actual existence of this business as a company that has been legally constituted; (ii) funds transfers to Integra Consultores y Servicios S.A.; (iii) the accounting procedures of such transfers in favor of Integra Consultores y Servicios S.A., (iv) advices to Integra Consultores y Servicios S.A. with regard to the use of such funds transferred as irrevocable capital contributions on behalf of future calls for shares. ----------------------------------------------------------------------------

- Requesting the following companies to bring the Minutes Books of Shareholders Meetings, the Minutes Books of the Meetings of the Board of Directors, plus balance sheets relevant to the fiscal years involved in the ex officio determination: Multiuno S.A.; La Radio S.A.; Tierras de Cuyo S.A.; Grupo Vitivinícola de Tupungato, S.A.; Vinos del Valle de Tupungato S.A., and Tecam Austral S.A. --------------------------

**C. Information-related documentation.** -----------------------------------------------

- Requesting: Banca Nazionale del Lavoro S.A., Banco de Prevision Social S.A., and Banco Mendoza S.A. so that they inform; (i) how many accounts do Integra Consultores y Servicios S.A. have registered in those banks; (ii) transfers sent to the account of Integra Consultores y Servicios S.A., performed by Connolly Company S.A. and/or Vetalir Internacional S.A. and/or Resetel S.A. and/or Integra Financial Services LLC as of year 1998 up to year 2000, amounts, and dates. --------------------

- Requesting the credit card company, the statements of which are attached hereto as a documental proof, so that said credit card company certify the truthfulness of expenses performed by means of the crediting of payments by said credit card company to the respective shops and the like wherein the expenses had taken place.-

**D. Expertise**. -----------------------------------------------------------------------------------

Mr. Gabriel R. De Alvadalejo, a Certified Public Accountant (professional registration: To. 165, Fo.025 CPCECBA *–this is the acronym of the Professional Council for Argentine Public Accountants, T's N.*), domiciled on (*again, address is written Argentine style, T's N.*) Av. Cordoba 836, piso 2 (*2nd floor*), Oficina 210 (*Office # 210*) of the City of Buenos Aires, with phone number (*area code for international calls: 5411, T's N.*) 4393-3280 has been appointed to expose, and decide on the following points of the expertise required, by examining the Minutes Books and accounting documentations pertaining to the following companies: Integra Consultores y Servicios S.A; Resetel S.A.; Grupo Vitivinicola de Tupungato S.A.; Multiuno S.A.; La Radio S.A.; Tierras de Cuyo S.A.; Vinos del Valle de Tupungato S.A., and Tecam Austral S.A.- that is, Mr. De Alvadalejo: -----------------------------

**a)** Is to say whether those companies are observing the good (legal) bookkeeping practices. -------------------------------------------------------------------------------------

**b)** By observing the accounting books and/or documentation pertaining to Integra Consultores y Servicios S.A., and Resetel S.A., he shall have to individualize the amounts, dates y types of transfers performed by Connolly Company S.A., Resetel S.A., Vetalir Internacional S.A., and Integra Financial Services LLC. -----------------

**c)** By observing the accounting books and/or documentation pertaining to companies listed herein belos, he shall have to individualize the mounts, dates, and types of transfers performed by Integra to: Multiuno S.A.; La Radio S.A.; Tierras de Cuyo S.A.; Vinos del Valle de Tupungato S.A., and Tecam Austral S.A.- --------------------





**COLEGIO DE TRADUCTORES PÚBLICOS DE LA CIUDAD DE BUENOS AIRES**

República Argentina                                                      Ley 20.305

A C T U A C I Ó N   P R O F E S I O N A L

**d)** He shall have to reconcile Integra banking deposits to sales-based income, irrevocable capital contributions received from other companies, as well as any other matter stemming from the supporting documentation, and ------------------------------

**e)** He shall have to reconcile the amounts stated as travel expenses, representation expenses, and so on, with the credit card statements that have been added as a documentary proof to these present. -------------------------------------------------------

**f)** He shall be at liberty to enlarge the expertise points herein. --------------------------

**VIII. RESERVATION OF LEGAL RIGHTS TO A FEDERAL QUESTION.** ---

We hereby perform the expressed reservation of legal rights to a federal question so that, if necessary, we could apply to Argentina's Supreme Court by submitting the extraordinary recourse authorized by Section 14 of (*Argentine*) Act # 48, and Section 6 of (*Argentine*) Act # 4055 on violation of guarantees stated by the (*Argentine*) National Constitution in Section 17 (property is inviolable, nobody can be deprived of his/her property, unless a legal decision based on the law had been issued otherwise), Section 18 (the due legal process, and the due defense at trial), and Section 19 (neither anybody can be forced to do what the law does not oblige him/her to do, nor anybody can be deprived of things the law does not forbid him/her to possess).-------

**IX. AUTHORIZATIONS.** -----------------------------------------------------------------

We hereby authorize indistinctly the following lawyers, Messrs. Raul Luque and/or Eduardo M.Vila and/or Lisandro Nobile and/or Daniel Esposito and/or Omar Sanchez so that they learn about the present proceedings, remove pages of documents for the files, require summons or notifications, orders, written communications, testimonies, and so on, and carry on any possible activity likely to be needed in this connexion. --

**X. LIST OF LEGAL DEMANDS.** -----------------------------------------------------

On the basis of the foregoing (*now the attorney-at-law is speaking in first person singular, T's N.*) I do request hereby:------------------------------------------------------

1. To be recognized as a representing the (*appealing*) party, and my domicile is hereby acknowledged. --------------------------------------------------------------------

2. That this recourse of appeal is considered as submitted within the legal deadline, and the legal accepted form, this recourse of appeal being submitted against Regulation # one / six / five / dash / oh / two DF RRME issued by the Administracion Federal de Ingresos Publicos - AFIP (*[Argentine] The Federal Administration for* Dirección General Impositiva - DGI ([Argentina] General Revenue Office).







3. The documentary proof be considered attached hereto, and the remaining proof be considered to have been offered. ------------------------------------------------------------

4. The Reservation of Legal Rights to a Federal Question be advised. ------------------

5. It is thus required that the present recourse of appeal be accepted on fact and law reasons submitted so that the ex officio determination against Integra be dismissed, with costs. ------------------------------------------------------------------------------

If things present are so resolved, justice shall be done. There appear two illegible signatures, under the right-side one there appears a rubber stamp reading Alfredo A. Bisero-Paratz, attorney-at-law. ------------------------------------------------------------

------------------------------------------------------------------------------

------------------------------------------------------------------------------

I, Francisca-Juana Martins de Souza, of the city of Buenos Aires, a sworn translator duly admitted, qualified and sworn in the Public Translators' Association of the City of Buenos Aires, do hereby certify the foregoing to be a true and accurante translation of the original Diplomatic Letters Rogatory written in the Spanish language hereunto attached. IN WITNESS WHEREOF, I have hereunto set my hand and official seal in Buenos Aires, on the twenty-first day of October year two thousand five. As requested by the above mentioned Translators' Association the foregoing is to be back translated into the Spanish language------------------------------------------------------------

ES TRADUCCION FIEL al idioma inglés del adjunto documento original "Exhorto" redactado en idioma nacional, que he tenido ante mi vista y al que me remito a todos sus efectos y que firmo y sello en mi carácter de Traductora Pública de idioma inglés, en Buenos Aires, el veintiuno de octubre de dos mil cinco. ------------------------------



COLEGIO DE TRADUCTORES PUBLICOS
DE LA CIUDAD DE BUENOS AIRES
**Corresponde a la Legalización**
Nº TS-28900/05

GUSTAVO ADRIAN SIGALOT

FRANCISCA-JUANA MARTINS DE SOUZA
TRADUCTORA PUBLICA
FRANCES MAT. PROF. Tº IX Fº 011
INGLES MAT. PROF. Tº X Fº 180
CAPITAL FEDERAL 2134

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

```
IN RE LETTER OF REQUEST          )
FROM ARGENTINA                   )
IN THE MATTER OF                 )   Misc No. 06-
INTEGRA FINANCIAL SERVICES, L.L.C. )
                           ORDER
```

Upon application of the United States of America; and upon examination of a letter of request from Argentina whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in Argentina and the Court being fully informed in the premises, it is hereby

**ORDERED**, pursuant to Title 28, United States Code, Section 1782, that Richard G. Andrews, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from Argentine authorities as follows:

1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party

shall be required);

3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in Argentina, which procedures may be specified in the request or provided by the Argentine authorities;

4. seek such further orders of this Court as may be necessary to execute this request; and

5. certify and submit the evidence collected to the Office of International Affairs, Civil Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Argentine authorities.

IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

Dated:   This _____ day of _____, 2006.


_____
United States District Court Judge